Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MUNICIPIO DE CAGUAS<br><br>Apelado<br><br>v.<br><br>CARLOS ESTEVES TORRES**, CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES (CRIM)**<br>y otros<br><br>Apelantes | KLAN202200770 | APELACIÓN Procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Civil Núm.: CG2022CV00807<br><br>Sobre: Expropiación Forzosa |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Martínez Cordero[1].

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de febrero de 2024.

Comparece el Centro de Recaudación de Ingresos Municipales (en adelante parte apelante o CRIM) mediante un recurso de *Apelación*, para solicitarnos la revisión de la *Sentencia* emitida el 1 de septiembre de 2022 y notificada el 2 de septiembre de 2022 por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante TPI).[2] Mediante el dictamen apelado, el foro primario declaró Ha Lugar la *Petición* sobre expropiación forzosa presentada por el Municipio de Caguas (en adelante Municipio o apelado).

Por los fundamentos que expondremos a continuación, se *desestima* el presente recurso por falta de jurisdicción.

**I**

El 11 de marzo de 2022, el Municipio presentó una *Petición* sobre expropiación forzosa.[3] Mediante esta, justificó la necesidad de

---

[1] Véase, Orden Administrativa OATA-2023-001 del 9 de enero de 2023, en la que se asigna el presente recurso a la Hon. Beatriz M. Martínez Cordero en sustitución de la Hon. Alicia Álvarez Esnard.
[2] Apéndice de la parte apelante, a las págs. 292-303.
[3] *Id.,* a las págs. 1-6.

adquirir la propiedad objeto de dicha acción por medio de la Ordenanza Municipal Número 20, Serie Núm. 2018-2019, ya que el aludido inmueble había sido declarado estorbo público. El Municipio estimó que la compensación justa y razonable que se debía pagar por la propiedad era la suma de cuarenta y siete mil dólares ($47,000.00), sin embargo, sostuvo que conforme a la Sección 5(a) de la *Ley General de Expropiación Forzosa*,[4] existía una deuda por contribuciones y gastos de limpieza, mantenimiento y otras expensas necesarias para eliminar la condición de estorbo público, las cuales totalizaban $61,308.40. Ante esto, el apelado razonó que no se requería depositar ninguna suma de dinero al TPI en concepto de justa compensación y, en consecuencia, solicitó, entre otras cosas, que el Municipio quedara investido con el título de pleno dominio sobre la propiedad en cuestión.

Por su parte, el 5 de abril de 2022, la parte apelante presentó un documento intitulado *Comparecencia Especial para Notificar Contribuciones Adeudadas*.[5] En esencia, argumentó que la propiedad que el Municipio pretendía expropiar tenía una deuda contributiva de $90,971.32 y que el CRIM tenía una acreencia sobre dicha cantidad. A tales efectos, solicitó al TPI que se emitiera un cheque a favor del CRIM por la cantidad antes mencionada, para cubrir toda la deuda contributiva de la propiedad expropiada.

Subsiguientemente, el 3 de mayo de 2022, el TPI emitió una *Orden* en la cual declaró Ha Lugar una moción del Municipio en la que solicitaba el emplazamiento y notificación por medio de edictos de las partes con interés Carlos Esteves Torres, John Doe y Richard Roe.[6] Consecuentemente, el TPI ordenó que estas personas fuesen emplazadas y notificadas conforme a la Regla 58.4 de Procedimiento

---

[4] *Ley General de Expropiación Forzosa*, Ley de 12 de marzo de 1903, 32 LPRA sec. 2902.
[5] Apéndice de la parte apelante, a las págs. 100-106.
[6] *Id.,* a las págs. 122-123.

Civil.[7] Cabe aclarar que surge del expediente que estos emplazamientos se expidieron el 5 de mayo de 2022.[8]

Por otro lado, el 5 de mayo de 2022, la parte apelada presentó una *Moción en en (sic) Oposición a Solicitud del CRIM Hecha en Comparecencia Especial para Notificar Contribuciones Adeudadas (SUMAC Doc. 6).*[9] Fundamentó su postura con el planteamiento en torno a que no procedían los remedios solicitados por la parte apelante toda vez que en casos de propiedades declaradas como estorbos, los municipios tendrían la facultad en los casos de expropiación forzosa para deducir de la suma de dinero estimada como justa compensación, las deudas, gravámenes por concepto de multas y gastos de limpieza y mantenimiento de la propiedad inmueble.

Tras una serie de eventos procesales los cuales no son necesarios pormenorizar, el 31 de agosto de 2022, el Municipio presentó una *Moción para Someter Affidavit de Publicación de Edicto,*[10] en la cual anejó evidencia relacionada a que se había publicado el emplazamiento por edicto en un periódico de circulación general. De ahí, el 29 de agosto de 2022, se llevó a cabo una vista argumentativa[11] y el 1 de septiembre de 2022 el TPI emitió su *Sentencia.*[12] En el dictamen, el foro *a quo* declaró Ha Lugar la expropiación de conformidad con los siguientes pronunciamientos:

1. Se declara No Ha Lugar a la Moción Uniéndonos a la Representación Legal y Solicitando Paralización por Falta de Parte con Interés presentada por el CRIM el 29 de agosto de 2022.

2. Habiéndose declarado Ha Lugar el Exhibit "A" Enmendado que radicó el Municipio conjuntamente con una solicitud de enmienda, dicho Exhibit "A" Enmendado se hace formar parte de esta Sentencia para todo fin legal.

---

[7] 32 LPRA Ap. V, R. 58.4.
[8] Apéndice de la parte apelante, a las págs. 125-126.
[9] *Id.,* a las págs. 128-154.
[10] *Id.,* a las págs. 285-286.
[11] *Id.,* a las págs. 287-289.
[12] *Id.,* a las págs. 292-303.

3. Se decreta que la justa compensación a pagarse por la propiedad expropiada lo constituye la suma de CUARENTA Y SIETE MIL DOLARES ($47,000.00), la cual por exceder las cantidades adeudadas por contribuciones, gastos de limpieza, mantenimiento y aquellos necesarios para la eliminación del estorbo público, crea una deficiencia de SESENTA Y UN MIL TRESCIENTOS OCHO D[Ó]LARES CON CUARENTA CENTAVOS CIENTO (-$61,308.40) a favor del Municipio por lo que no se requiere de consignación alguna.

4. Se Ordena al CRIM a eliminar del expediente contributivo de la propiedad aquí expropiada, catastro número 225-074-189-17-001 la deuda por contribuciones sobre la propiedad acumulada.

5. El Municipio tiene derecho al título en pleno dominio, posesión y uso inmediato de la propiedad expropiada, la cual deberá entregar materialmente toda persona que la ocupe o est[é] a cargo de ella.

6. El Honorable Registrador de la Propiedad deberá inscribir a favor del MUNICIPIO DE CAGUAS el título en pleno dominio de la propiedad que se describe en el Exhibit "A" Enmendado, libre de toda clase de cargas, menciones, defectos o reservas de cualquier clase o naturaleza.

7. Se Ordena la eliminación de John Doe y Richard Roe por carecer de interés en estos procedimientos.[13]

Dicha Sentencia se notificó el 2 de septiembre de 2022 a la representación legal del CRIM y del Municipio.[14] Inconforme, el 3 de octubre de 2022, compareció el CRIM mediante un recurso de *Apelación* en el cual esgrimió la comisión de dos (2) errores por el foro primario, a saber:

A. Erró el Tribunal de Primera Instancia al entender que el CRIM no tiene legitimación activa para cobrar o recaudar la contribución por entender que el Municipio tiene facultad concedida por la Sección 5A de la Ley General de Expropiación Forzosa y por el Código Municipal de 2020, Artículo 4.010(d), para descontar de la suma determinada como justa compensación inicial todas las deudas por gastos de limpieza y mantenimiento para eliminar la condición de estorbo público y deudas, intereses, recargos, penalidades, que correspondan a contribuciones sobre la propiedad inmueble, en el acto de instar la acción de expropiación en el Tribunal equiparando dicho acto inherente de un proceso de expropiación

---

[13] Apéndice de la parte apelante, a las págs. 302-303.
[14] *Id.,* a la pág. 292.

a un acto administrativo dentro de un proceso de declaración de un estorbo público y determinando que el mismo no es revisable por el Tribunal. Aun cuando ello constituye un acto contrario a la separación de poderes de nuestra Constitución y cuando resulta contrario con las disposiciones relacionadas con las facultades del CRIM, al fideicomiso establecido, la distribución estatuida del recaudo y la prelación de redención de deudas estatales y municipales establecida en la Ley 107-2020.

B. Erró el Tribunal de Primera Instancia al impedirle al CRIM tener la oportunidad de examinar mediante el mecanismo de contrainterrogatorio en una vista la evidencia de las deudas por gastos de limpiezas y mantenimiento para eliminar la condición de estorbo público en violación al debido proceso de ley en su acepción de juicio justo a pesar de ya haber señalado vista a los efectos y de haber ordenado que la parte contraria se expresara.

Puntualizamos que de los autos pudimos constatar que, al menos a la fecha en que se presentó el escrito de *Apelación,* el foro primario no había emitido una notificación de sentencia por edicto, menos aún su publicación. Oportunamente, el 1 de noviembre de 2022, compareció le Municipio con su *Alegato en Oposición de la parte Apelada.* Con el beneficio de la comparecencia de las partes, procedemos a resolver la controversia que está ante nuestra consideración.

**II**

**A. Jurisdicción**

La jurisdicción es el poder o la autoridad que posee un tribunal para resolver las controversias presentadas ante su consideración.[15] Los tribunales adquieren jurisdicción por virtud de ley, por lo que no pueden arrogársela ni las partes pueden otorgársela.[16] Es norma reiterada en nuestro ordenamiento, que: "los tribunales deben ser celosos guardianes de su jurisdicción y que

---

[15] *AAA v. Unión Independiente Auténtica de Empleados de la AAA,* 199 DPR 638, 651-52.
[16] *Ríos Martínez, Com. Alt. PNP v. CLE,* 196 DPR 289, 296 (2016).

no tienen discreción para asumir jurisdicción allí donde no la tienen".[17] Es norma reconocida que las cuestiones relativas a la jurisdicción de los tribunales para atender los recursos ante su consideración constituyen materia privilegiada.[18] De manera que, debido a su naturaleza privilegiada, las cuestiones de jurisdicción deben ser resueltas con preferencia, ya sea porque fuera cuestionada o motu proprio, pues, por su naturaleza, incide directamente sobre el poder que tiene para adjudicar las controversias.[19]

Por tal motivo, cuando un tribunal carece de jurisdicción, debe declararlo y desestimar la reclamación sin entrar en sus méritos.[20] De lo contrario, cualquier dictamen en los méritos será nulo y, por ser ultra vires, no se puede ejecutar.[21] Es decir, una sentencia, dictada sin jurisdicción por un tribunal, es una sentencia nula en derecho y, por lo tanto, inexistente.[22]

**B. Notificación Adecuada.**

En nuestro ordenamiento jurídico es necesario que la notificación de las ordenes, resoluciones y sentencias emitidas por los tribunales se den de forma adecuada.[23] Ello, pues así el debido proceso de ley en su vertiente procesal lo exige.[24] Así pues, "[l]a incorrecta notificación de los dictámenes emitidos por los tribunales atenta contra los derechos de las partes al privarles de cuestionar el dictamen emitido y causarles demoras e impedimentos en el proceso judicial.[25] Por ello, al no notificarse adecuadamente alguna

---

[17] *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012); *S.L.G. Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882 (2007).
[18] *AAA v. Unión Abo. AAA*, 158 DPR 273, 279 (2002).
[19] *Fuentes Bonilla v. ELA*, 200 DPR 364, 372 (2018).
[20] Regla 83 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B.
[21] *Bco. Santander v. Correa García*, 196 DPR 452, 470 (2016); *Maldonado v. Junta Planificación*, 171 DPR 46, 55 (2007).
[22] *Montañez v. Policía de Puerto Rico,* 150 DPR 917, 921-922 (2000).
[23] *Berrios Fernández v. Vázquez Botet,* 196 DPR 245, 250 (2016).
[24] *Dávila Pollock et als. v. R.F. Mortgage,* 182 DPR 86, 94 (2011).
[25] *Berrios Fernández v. Vázquez Botet, supra,* 250-251.

resolución, orden o sentencia, estas no surten efecto y los términos no comienzan a transcurrir.[26]

En armonía con lo antes expuesto, el Tribunal Supremo de Puerto Rico ha explicado que "[l]a notificación adecuada de una parte es aquella que se dirige específicamente a la parte o a su representación legal".[27]

En ese sentido, la Regla 65.3 de Procedimiento Civil, regula lo concerniente al proceso de notificación de órdenes, resoluciones y sentencia a aquellas partes que han sido emplazados mediante edicto:

> En el caso de partes en rebeldía que hayan sido emplazadas, **por edictos y que nunca hayan comparecido en autos** o de partes demandadas desconocidas, el Secretario o Secretaria expedirá un aviso de notificación de sentencia por edictos para su publicación por la parte demandante. El aviso dispondrá que éste, debe publicarse una sola vez en un periódico de circulación general en la Isla de Puerto Rico dentro de los diez (10) días siguientes a su notificación e informará a la parte demandada de la sentencia dictada y del término para apelar. Copia del aviso de notificación de sentencia publicado será notificada a la parte demandada por correo certificado con acuse de recibo dentro del término de diez (10) días luego de la publicación del edicto a la última dirección conocida del demandado. **Todos los términos comenzarán a computarse a partir de la fecha de la publicación del edicto, la cual deberá acreditarse mediante una declaración jurada del (de la) administrador(a) o agente autorizado(a) del periódico, acompañada de un ejemplar del edicto publicado.** (Énfasis suplido).[28]

La citada regla establece que la Secretaría del TPI tiene la obligación de notificar una sentencia para su publicación por edicto en tres (3) circunstancias determinadas, cuando la parte se emplazó por edicto, no compareció o era un demandado desconocido.[29] A esto también se ata la norma reiterada referente a que la notificación a

---

[26] *Bco. Popular v. Andino Solís,* 192 DPR 172, 183 (2015).
[27] *R & G Mortgage v. Arroyo Torres y otros,* 180 DPR 511, 525 (2010).
[28] 32 LPRA Ap. V, R. 65.3.
[29] *Bco. Popular v. Andino Solís, supra,* 185.

las partes es un requisito importante para que una sentencia contenga un aspecto de finalidad y firmeza. Un dictamen judicial es final cuando se archiva en autos la notificación y se registra la sentencia, pero se convierte en firme una vez haya transcurrido el término para pedir reconsideración o apelar sin que esto se haya hecho.[30] Sin embargo, **si la sentencia "no se notifica a una parte la misma carece de eficacia y los términos para solicitar remedios o presentar recurso contra ella no decursan"**. (Énfasis suplido).[31] Así, "si no se cumple con el trámite de notificación de las sentencias, éstas no surtirán efecto alguno ni podrán ser ejecutadas".[32]

**III**

Como cuestión de umbral, este tribunal intermedio tiene la obligación de auscultar nuestra jurisdicción para atender el recurso de *Apelación* presentado por el CRIM. La parte apelante acudió ante nos y esgrimió la comisión de dos (2) errores por parte del TPI: (i) que el foro primario erró al determinar que el CRIM no tenía legitimación activa para cobrar una contribución por entender que el Municipio tiene la facultad concedida por ley para descontar de la suma determinada como justa compensación todas las deudas que correspondan a contribuciones sobre propiedad inmueble y (ii) que el foro *a quo* incidió al impedirle al CRIM la oportunidad de contrainterrogar en una vista, la prueba relacionada a los gastos para eliminar la condición de estorbo público.

Es menester resaltar que la parte apelante presentó el presente recurso el 3 de octubre de 2022. Asimismo, el TPI emitió su *Sentencia*, en la que declaró Ha Lugar la *Petición* de expropiación

---

[30] *Cruz Roche v. Colon y Otros*, 182 DPR 313, 323, (2011), citando a R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., Ed. Lexis Nexis, 2010, Puerto Rico, págs. 378–379.

[31] R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 2802, pág. 212.

[32] *Velez v. A.A.A.*, 164 DPR 772, 789 (2005).

forzosa el 1 de septiembre de 2022 y la notificó el 2 de septiembre de 2022. Surge de dicha notificación que el foro primario notificó su dictamen a las siguientes personas: Alexis Miguel Acevedo Colón, Brenda I Varay López y Fernando Van Derdys quienes fueron la representación legal del CRIM e igualmente se le notificó a Cynthia Torres Torres quien fue la representación legal del Municipio.

Sin embargo, conforme surge de expediente, en una moción intitulada *Moción para Someter Affidavit de Publicación de Edicto,*[33] de la propia *Sentencia* apelada y de la minuta de la vista argumentativa que se celebró el 29 de agosto de 2022, se constató que se emplazó por edicto a las partes con interés en este caso, a saber, Carlos Esteves Torres, John Doe y Richard Roe.

Como parte de nuestro ejercicio para auscultar nuestra jurisdicción examinamos los autos del TPI en el SUMAC. Los autos revelan que posterior a que la parte apelante presentara el presente recurso de *Apelación* ante esta Curia, el 9 de junio de 2023, el Municipio presentó ante el TPI una *Escrito al Expediente Judicial.*[34] Mediante esta, explicó que la *Sentencia* no había sido notificada por edicto y publicada conforme a las disposiciones de la Regla 65.3 (c) de las de Procedimiento Civil de Puerto Rico, por lo cual le solicitó al TPI que emitiera la orden a los efectos de cumplir con dicha disposición. Así pues, el 13 de junio de 2023, el foro primario notificó una Orden, para que se notificara por edicto la Sentencia apelada.[35] Así las cosas, el 10 de julio de 2023, el Municipio presentó una *Moción Informativa* en la cual acreditó que la sentencia fue publicada mediante edicto, el 16 de junio de 2023.[36] Es claro que **todos estos incidentes procesales ocurrieron luego de la presentación del**

---

[33] Véase, SUMAC, a la entrada 30
[34] *Id.,* a la entrada 56.
[35] *Id.,* a la entrada 57.
[36] *Id.,* a la entrada 59.

**recurso de *Apelación*,** es decir estando el caso ante nuestra consideración.

Forzoso es concluir, que al momento en que la parte apelante presentó su Apelación, la *Sentencia* apelada no había cobrado eficacia toda vez que no se les había notificado a las partes con interés que fueron debidamente emplazadas por edicto y que no comparecieron al pleito. La Regla 65.3 (c) es clara en cuanto a que toda sentencia debe notificarse por edicto a aquellas partes que fueron emplazadas mediante ese mismo medio y no comparecieron al pleito.[37] El no cumplir con esta norma no solo repercute en la eficacia del dictamen y el impedimento de que las partes puedan recurrir de esta, sino que también constituye una violación al debido proceso de ley. Por consiguiente, es forzoso concluir que en el presente pleito no queda ninguna otra vía más que desestimar el recurso por falta de jurisdicción por este ser prematuro.

**IV**

Por los fundamentos que anteceden, se *desestima* el recurso de apelación por falta de jurisdicción, por haberse presentado prematuramente.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[37] 32 LPRA Ap. V, R. 65.3.